[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13043

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WALTER CHASE RIDER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cr-00081-KD-B-1

_____

Before LAGOA, KIDD, and WILSON, Circuit Judges.

PER CURIAM:

Defendant Appellant Walter Rider appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). On appeal, Rider argues that *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), dictate that § 922(g) is unconstitutional as applied to him. He also argues that the Second Amendment does not permit a permanent ban on firearm possession that is predicated on a non-violent drug offense. Under both *Bruen* and *Rahimi*, § 922(g) is constitutional as applied to Rider, and the Second Amendment permits a permanent ban on his firearm possession. As a result, we affirm.

**I.**

In April 2023, a grand jury charged Rider under 18 U.S.C. § 922(g)(1) for possession of a firearm by a convicted felon. Rider had three prior felony convictions for unlawful possession of alprazolam, methamphetamine, and synthetic marijuana.

Rider moved to dismiss the indictment against him and argued that, under the *Bruen* text-and-history framework, his possession of a firearm was protected by the Second Amendment. The district court denied Rider's motion. It noted that this court rejected a Second Amendment challenge to § 922(g)(1) in *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) (per curiam), albeit before *Bruen*. But it reasoned that the Supreme Court's decision in

*Bruen* did not change the regulatory framework that prohibits felons from possessing firearms

After the court denied Rider's motion, he pleaded guilty. The district court sentenced Rider to thirty-six months' imprisonment and three years of supervised release. We held Rider's appeal in abeyance, first pending the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. 680 (2024), and then pending our decision in *United States v. Dubois*, -- F.4th --, 2025 WL 1553843 (11th Cir. 2025).

## II.

We review the constitutionality of a statute de novo as a question of law. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).[1] Section 922(g)(1) makes it a crime for any person convicted of a felony to possess firearms or ammunition. 18 U.S.C. § 922(g)(1). We turn first to Rider's argument that *Bruen* and *Rahimi* determined that § 922(g) is unconstitutional under the Second Amendment to as applied to him.[2]

---

[1] Despite the government's contrary argument, Rider adequately preserved his Second Amendment arguments by raising a facial challenge in his Motion to Dismiss, and an as-applied challenge in his Notice of Supplemental Authority.

[2] The distinction between as applied and facial constitutional challenges "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 331 (2010).

### III.

In *District of Columbia v. Heller*, the Supreme Court first recognized that the Second Amendment protects an individual's right to possess and carry weapons for lawful self-defense, unconnected with militia service. 554 U.S. 570, 635 (2008). The Court then concluded that "on the basis of both text and history," D.C.'s law prohibiting the possession of handguns in homes violated the Second Amendment. *Id.* at 595. But the *Heller* Court also acknowledged that the Second Amendment right to keep and bear arms was "not unlimited," emphasizing that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626. The Supreme Court labeled these restrictions as "presumptively lawful." *Id.* at 627 n.26. It specifically ruled that Heller only had a right to register his handgun and carry it in his home if he was "not disqualified from the exercise of Second Amendment rights." *Id.* at 635.

After *Heller*, we considered and rejected a constitutional challenge to § 922(g)(1)'s prohibition on felons possessing firearms. *See Rozier*, 598 F.3d at 770–71. We explained, "the first question to be asked" under *Heller* "is whether one is *qualified* to possess a firearm." *Id.* at 770. When making this determination, a convicted felon's Second Amendment right to bear arms "is not weighed in the same manner as that of a law-abiding citizen." *Id.* at 771. Instead, *Heller* recognized that prohibiting felons from possessing firearms was a "presumptively lawful longstanding prohibition." *Id.* (quotation marks omitted). And this language from *Heller* "suggest[ed] that statutes disqualifying felons from possessing a firearm

under any and all circumstances do not offend the Second Amendment." *Id*. We concluded that § 922(g)(1) was a "constitutional avenue to restrict the Second Amendment right of certain classes of people," including those with felony convictions. *Id*.

We rejected Rozier's argument that the statement from *Heller* about "longstanding prohibitions on the possession of firearms by felons" was "merely dicta" for two reasons. *Id*. at 771 n.6. First, to the extent that the statement "limit[ed] the Court's opinion to possession of firearms by *law-abiding* and *qualified* individuals," it was necessary to the decision reached. *Id*. Second, even if the statement was superfluous to *Heller*'s holding, we would still afford it "considerable weight," as dicta from the Supreme Court is not to be lightly ignored. *Id*. Because Rozier, as a convicted felon, fell within a class of people who could be excluded from firearm possession, Rozier's purpose for possessing a handgun and the fact that he only used the gun in his home for purposes of self-defense were "irrelevant." *Id*. at 770.

Several years later, the Supreme Court in *Bruen* introduced a new framework to correctly apply "*Heller*'s text-and-history standard." 597 U.S. at 39. At the first step, the court must decide whether the challenged law burdens conduct protected by the plain text of the Second Amendment. *Id*. at 17, 32. If the law burdens protected conduct, the government must demonstrate the restriction burdens the Second Amendment right in a way that is "consistent with this Nation's historical tradition of firearm regulation." *Id*. at 17.

Applying its historical test, the Court invalidated New York's licensing law, which required applicants to demonstrate a "special need for self-defense" before obtaining a permit to carry firearms in public. *Id.* at 38. *Bruen* relied on two main principles. First, a total or near-total ban on carrying weapons outside the home would infringe the Second Amendment right. *Id.* Second, the state failed to identify a "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 38–39.

Applying *Bruen*, we rejected a defendant's Second Amendment challenge to § 922(g)(1) in *United States v. Dubois*, 94 F.4th 1284, 1291–93 (11th Cir. 2024), *vacated*, 145 S. Ct. 1041 (2025), *reinstated by* -- F.4th --, 2025 WL 1553843 (11th Cir. June 2, 2025). We found the challenge was foreclosed by *Rozier*, which "interpreted *Heller* as limiting the [Second Amendment] right to 'law-abiding and qualified individuals' and as clearly excluding felons from those categories by referring to felon-in-possession bans as presumptively lawful." *Id.* at 1293 (quoting *Rozier*, 598 F.3d at 771 & n.6). We also rejected the defendant's argument that *Bruen* abrogated *Rozier*, observing that "*Bruen*, like *Heller*, repeatedly described the right as extending only to 'law-abiding, responsible citizens.'" *Id.* (quoting *Bruen*, 597 U.S. at 26). Because *Rozier* stood as binding, it foreclosed the defendant's Second Amendment challenge to § 922(g)(1). *Id.*

Then, in *Rahimi*, the Supreme Court rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(8), which prohibits

individuals subject to a domestic violence restraining order from possessing a firearm. 602 U.S. at 684–85, 693. The Court again declared that prohibitions on "the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id.* at 699 (quoting *Heller*, 554 U.S. at 626–27 & n.26).

The Court observed that in *Heller* and *Bruen*, it "used the term 'responsible' to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right." *Id.* at 701–02. Even in holding that the statute was not unconstitutional as applied, the Court rejected the government's argument that a person could be disarmed "simply because he is not 'responsible.'" *Id.* at 701. It reasoned that the term was too vague to impose a meaningful limitation. *Id.* But, unlike individuals merely deemed irresponsible, "[a]n individual found *by a court* to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 702 (emphasis added).

In January 2025, the Supreme Court vacated our decision in *Dubois* and remanded the case for further consideration after *Rahimi*. *See Dubois*, 145 S. Ct. at 1041. We reinstated our previous opinion in June 2025, concluding "that *Rahimi*—like [*Bruen*]—did not abrogate our holding in *Rozier* that section 922(g)(1) is constitutional under the Second Amendment." *Dubois*, 2025 WL 1553843, at *1. We reasoned that "[t]he only time that the *Rahimi* majority mentioned felons was to reiterate *Heller*'s conclusion that prohibitions on the possession of firearms by felons and the mentally ill are presumptively lawful." *Id.* at *5 (internal quotation

marks omitted and alterations adopted). We stated in explicit terms that "*Rahimi* reinforced—not undermined—*Rozier*." *Id.* Therefore, § 922(g) is constitutional as applied to Rider.

## IV.

For the same reasons, Rider's argument that the Second Amendment does not permit a permanent ban on firearm possession predicated on a non-violent drug offense is without merit.

We, therefore, affirm.

**AFFIRMED.**